The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROXANNE LEAVELL,

     Plaintiff,

v.

TARGET CORPORATION, dba TARGET
STORE #0627, *et al.*

     Defendants.

Case No. 2:24-cv-471-BJR

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT**

## I.  INTRODUCTION

This matter comes before the Court on Defendant's motion for summary judgment, which plaintiff opposes. Dkt. Nos. 25 and 32. Having reviewed the motion, opposition, and reply thereto, as well as the record of the case and the relevant legal authority, the Court will grant the motion. The reasoning for the Court's decision follows.[1]

---

[1] Plaintiff moves to strike "unsworn testimony" of Target's attorney. Dkt. No. 32 at 9. In particular, Plaintiff objects to the following statement in Defendant's summary judgment motion: "Prior to Plaintiff's fall there had been no reports to Target." Plaintiff argues that this statement is not supported by a declaration or testimony from any Target employee with personal knowledge and, as such, should be stricken from the record. Target does not oppose the motion to strike. The Court will grant the motion and did not consider the foregoing statement in resolving the motion for summary judgment.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

- 1

## II.    PROCEDURAL HISTORY

Plaintiff Roxanne Leavell ("Plaintiff") filed this lawsuit for negligence against Defendant Target Corporation dba Target Store #0627 ("Target") and Defendants J. Doe 1-10 who Plaintiff alleges are employees and/or agents of Target. Dkt. No., Ex. 3 ("Comp.") at ¶¶ 2-3. The lawsuit was original filed in state court but was removed to this Court based on diversity jurisdiction. Dkt. No. 1. The parties proceeded to discovery and Target now moves for summary judgment on Plaintiff's claims pursuant to Federal Rule of Civil Procedure 56.

## III.    FACTUAL BACKGROUND

The following facts are not in dispute: On September 1, 2021 at 5:14:56 PM, Plaintiff fell while shopping at the Target store in Tukwila, Washington. Comp. ¶ 6; Dkt. No. 26, Ex. B Video of incident ("Video"). She had been in the store for ten to fifteen minutes "at the most" before she fell. Dkt. No. 26, Ex. A Plaintiff's Deposition ("Pl. Depo.") at 32. She slipped while pushing her shopping cart through the aisle and landed on her left knee. Dkt. No. 26, Ex. B Video. The parties agree that there was liquid on the floor where Plaintiff fell, as evidenced by Plaintiff's statements, the statements of several Target employees, and pictures taken after the incident occurred. Pl. Depo. at 34; Dkt. No. 33, Ex. 10 Target Employee Reports; Dkt. No. 33, Ex. 9 Photographs. Plaintiff did not see the liquid before she slipped. Pl. Depo. at 32. Neither Plaintiff nor Target know what the liquid was, how it got on the floor, or how long it had been there. *See*, *e.g.*, Dkt. No. 33, Ex. 13 Target 30(b)(6) Deposition at 33-34; Dkt. No. 35 Declaration of Roxanne Leavell at ¶ 4; Dkt. No. 34, Ex. C Levi Dixon Supplemental Report at 7. Plaintiff concedes that it is unclear "when the liquid hazard spilled on the ground." Dkt. No. 32, Plaintiff's Response to Defendant Target's Motion for Summary Judgment ("Pl. Opp.") at 11. A video of the incident produced by Target shows that at least thirty customers or employees walked through the area where Plaintiff fell in the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

- 2

1   five minutes before she fell, with at least ten of them doing so in the two minutes before she fell.

2   None of them slipped, avoided the area, or otherwise appeared to react to anything on the floor.

3   Dkt. No. 26, Ex. B Video.[2]

4                               **IV.    LEGAL STANDARD**

5           Summary judgment is proper if "there is no genuine dispute as to any material fact and the

6   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it

7   "might affect the outcome of the suit," and a dispute of fact is genuine if "the evidence is such that

8   a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,

9   477 U.S. 242, 248 (1986). Once a motion for summary judgment is properly made and supported,

10  the opposing party "must come forward with specific facts showing that there is a genuine issue for

11  trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation

12  marks omitted). The court then views the facts in the light most favorable to the nonmoving party

13  and resolves any ambiguity in that party's favor. *See Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir.

14  1994). The court may not, however, make credibility determinations or weigh evidence. *See*

15  *Anderson*, 477 U.S. at 248–49, 255. Moreover, conclusory, non-specific statements in affidavits are

16  not sufficient to raise a genuine dispute, and the court will not presume "missing facts." *Lujan v.*

17  *Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). Ultimately, summary judgment is appropriate

18  against a party who "fails to make a showing sufficient to establish the existence of an element

19  essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*

20  *Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

21

22  [2] It is possible that two customers may have looked at something on the floor at 5:10:46 PM, approximately four
    minutes before Plaintiff fell, but both parties agree that it is impossible to tell for sure from the video. Dkt. No. 26,
23  Ex. B Video. Indeed, Plaintiff concedes that the two individuals "may not have been looking at the ground or any
    hazard." Pl. Opp. at 11.

24  ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

25   - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## V.    DISCUSSION

As stated above, Plaintiff sued Target for negligence; the parties agree that Washington law governs Plaintiff's claim. Under Washington law, to succeed on a negligence claim, the plaintiff must prove that: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff sustained an injury; and (4) the defendant's breach caused the plaintiff's injury. *See Tincani v. Inland Empire Zoological Soc'y*, 875 P.2d 621, 624 (Wash. 1994)). In a premises liability case such as this one, a plaintiff may show proximate cause by demonstrating that an unsafe condition on the premises "was caused by the proprietor or his employees, or [that] the proprietor had actual or constructive notice of the unsafe condition." *Tavai v. Walmart Stores, Inc*., 307 P.3d 811, 816 (Wash. Ct. App. 2013); *see also Galassi v. Lowe's Home Centers, LLC*, 565 P.3d 116, 119 (Wash. 2025) ("In a premises liability case, the cause-in-fact element traditionally requires proof that the defendant had actual or constructive notice of the alleged unsafe condition."). Target argues that it is entitled to summary judgment because Plaintiff has presented no evidence that it caused the liquid to be on the floor or that it had actual or constructive notice that the liquid was on the floor before Plaintiff fell.

### A.    Whether Target Had Notice before Plaintiff Fell

Plaintiff does not allege that Target (or one of its employees) caused the liquid to be on the floor or that Target had actual notice of the liquid on the floor. Plaintiff does, however, make a half-hearted effort to argue that Target had constructive notice of the hazard before Plaintiff fell. Under Washington law, "[c]onstructive notice arises where the condition 'has existed for such time as would have afforded [the proprietor] sufficient opportunity, in the exercise of ordinary care, to have made a proper inspection of the premises and to have removed the danger.'" *Ingersoll v. DeBartolo, Inc*., 869 P.2d 1014, 1015 (Wash. 1994) (quoting *Smith v. Manning's Inc*., 126 P.2d 44 (Wash.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

- 4

1942)). Therefore, it is Plaintiff's burden to show that the "specific unsafe condition"—here, the liquid on the floor—"existed for such a time" that Target was afforded a "sufficient opportunity, in the exercise of ordinary care" to discover and clean up the liquid before Plaintiff fell. *Iwai v. State Employment Security Department*, 915 P.2d 1089, 1095 (Wash. 1996) ("Plaintiffs carry the burden" of proving constructive notice). Plaintiff has presented no evidence to this effect, instead stating that it is unclear "when the liquid hazard spilled on the ground." Dkt. No. 32 at 11. Indeed, Plaintiff concedes that the only evidence in the record regarding this issue—the video produced by Target—does not indicate when the liquid was spilled: "it may have been prior to the start of the video;" "it may have been several minutes before the fall;" "it may have been some other time." Dkt. No. 32 at 11. In short, there is simply no evidence in the record to suggest that the liquid was on the floor for a sufficient amount of time to afford Target the opportunity to discover and remove the danger. At best Plaintiff speculates that it was, but mere speculation cannot create an issue of fact to defeat summary judgment. *See Meyer v. Univ. of Washington*, 719 P.2d 98, 102 (Wash. 1986) ("nonmoving party in a summary judgment may not rely on speculation [or] argumentative assertions that unresolved factual issues remain"); *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."); *Gayton v. Lowe's Home Centers, LLC*, 2025 WL 1115412, *5 (W.D. Wash. April 15, 2025) ("[I]t is Plaintiff's burden to at least try to present a grain of evidence when Defendant's entire summary judgment argument hinges on the lack thereof.").

### B.    The *Pimentel* Exception

As stated above, in a premises liability case such as this one, the plaintiff ordinarily must prove that the defendant had notice of the dangerous condition that caused the injury. However, Washington law recognizes a limited exception to this requirement: notice need not be shown if the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

- 5

dangerous condition is continuous or foreseeably inherent in the nature of the defendant's business or mode of operation. *Tavai*, 307 P.3d at 813; *see also Galassi*, 565 P.3d at 119 (quoting *Pimentel v. Roundup Co.*, 666 P.2d 888 (Wash. 1983)) ("[W]e have recognized an exception" to the "traditional notice requirement" where "the nature of the proprietor's business and [its] methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable."). This is often referred to as the *Pimentel* exception. The reason for the *Pimentel* exception is that "when the operating methods of a proprietor are such that dangerous conditions are continuous or easily foreseeable, the logical basis for the notice requirement dissolves.'" *Tavai*, 307 P.3d at 814 (quoting *Pimentel*, 666 P.2d at 888)).

However, the Washington Supreme Court has clarified that "[d]etermining whether an unreasonably dangerous condition exist[s] is not automatic," particularly in "slip and fall cases":

> It is well established in the decisional law of this state that something more than a slip and a fall is required to establish ... the existence of a dangerous condition. Nor does the presence of water on the floor of a store establish negligence. More is needed, especially where wetness is to be expected. Liability is therefore far from unlimited because one cannot establish the existence of a dangerous condition merely by proving that one slipped and fell on a wet floor. It is thus possible . . . that it could be *reasonably foreseeable* that the floor *could* become unreasonably dangerous through being wet and slippery, but, at the same time, there might *not* be proof that the floor *was* unreasonably dangerous in *a* particular instance.

*Johnson v. Liquor and Cannabis Board*, 486 P.3d 125, 134 (Wash. 2021) (internal quotes and citations omitted; emphasis in original). Thus, the Washington Supreme Court has found the *Pimentel* exception applicable to a claim brought by a plaintiff who fell in the entryway of a store when the record contained evidence that: (1) the defendant had a policy of putting out a "slippery when wet" sign whenever it rained or when the floor had been recently mopped, (2) the store clerk's testimony that rain always brought in customers with "wet and muddy footprints," and (3) the clerk's testimony that "people entering a store on a rainy day is an inherent mode of operation" for

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

- 6

the defendant. *Johnson*, 486 P.3d at 135. On the other hand, in *Ingersoll v. DeBartolo, Inc.*, the Washington Supreme Court found that the plaintiff was not entitled to the *Pimentel* exception at summary judgment because the record was devoid of "obviously relevant facts relating to the nature of the [defendant's] business and its method of operation." 869 P.2d 1014, 1017 (Wash. 1994). In *Ingersoll*, the plaintiff slipped on a substance in the food court area of a mall. The plaintiff sued the owner of the mall as well as the company that provided janitorial services at the mall. The plaintiff presented evidence that there was more than one food-drink vender in the mall, that some of the vendors did not provide seating, and that some patrons carried the products to benches for consumption. *Id*. at 1016. The Washington high court determined that the foregoing evidence was insufficient to withstand a motion for summary judgment because it did not demonstrate that the "nature of the [m]all's business and its methods of operation [were] such that the existence of unsafe conditions [was] reasonably foreseeable." *Id*. at 1017. In particular, the court noted the lack of evidence pertaining to the location of the venders in relation to where the plaintiff fell and historical evidence of slip-and-fall incidents at the mall.

Likewise, the Washington Appellate Court affirmed summary judgment dismissal in *Carlyle v. Safeway Stores, Inc.*, 896 P.2d 750 (Wn. App. 1995), *reviewed denied*, 907 P.2d 297 (1995). There, the plaintiff slipped on a shampoo spill in the coffee section of a Safeway store. According to deposition testimony from two Safeway employees, one or two spills occurred each eight-hour shift and employees were in the habit of inspecting the store hourly; the produce area of the store was the messiest; the shampoo was not stored in the coffee aisle; and the Safeway manager was aware of "10 to 12 accident involving falls during the 11 years he had been at the store." 896 P.2d 753. The Appellate Court concluded that these facts were insufficient to raise an issue that unsafe conditions were reasonably foreseeable in the area where the plaintiff fell. *Id*. (noting that

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

- 7

the "mere presence of a slick or slippery substance on a floor is a condition that may arise

temporarily in any public place of business" …something more is needed" to invoke the *Pimentel*

exception). Therefore, the Appellate Court rejected the plaintiff's argument that there was an issue

of fact under the *Pimentel* exception. *Id*. (noting that the plaintiff "failed to produce any evidence

from which it could reasonably be inferred that the nature of Safeway's business and its methods

of operation are such that unsafe conditions are reasonably foreseeable in the area in which [the

plaintiff] fell").

       Finally, in *Tavai v. Walmart*, a case remarkably similar to the instant case, the Washington

Appellate Court affirmed the trial court's summary judgment dismissal of the plaintiff's claim for

injuries she allegedly sustained when she slipped and fell about 15 feet from a Walmart check-out

counter. 307 P.3d at 813. Like the instant case, the plaintiff did not see the water on the floor until

after she fell, she presented no evidence that any of the Walmart employees knew about the water

on the floor, and Walmart was unable to determine how or when the water got on the floor. *Id*.

Nevertheless, the plaintiff argued that the *Pimentel* exception should apply because Walmart sells

bottled water and groceries, she fell near a check-out counter, and there were 51 other reported

occurrences of slip-and-fall injuries at the store in the two prior years (23 were related to liquid on

the floor and seven occurred at the check-out lane). *Id*. at 816. The *Tavai* court concluded that the

foregoing evidence was insufficient to invoke the *Pimentel* exception because the plaintiff "did not

provide evidence that other people slipped in the particular area she slipped in." *Id*. (quoting *Arment

v. Kmart Corp*, 902 P.2d 1254 (Wn. App. 1995) ("[T]o invoke the *Pimentel* exception, a plaintiff

must present some evidence that the unsafe condition *in the particular location* of the accident was

reasonably foreseeable.") (emphasis in *Tavai*). The Appellate Court further stated that the "mere

fact that Walmart sells liquids is insufficient to meet the *Pimentel* exception." *Id.* (noting that the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

- 8

1    plaintiff did not provide evidence that Walmart sold drinks in open containers or that customers

2    were allowed or encouraged to open drinks before purchase).

3    In the instant case, Plaintiff argues that the *Pimentel* exception applies because it was

4    "foreseeable that liquid hazards will present on [Target's] floors, and its methods of operation of

5    employees responding to spills was inadequate." Dkt. No. 32 at 1. This Court disagrees with

6    Plaintiff and concludes that the case at bar is analogous to *Tavai*, *Ingersoll*, and *Caryle*. Here, like

7    the plaintiffs in *Tavai*, *Ingersoll*, and *Caryle*, Plaintiff failed to present historical evidence of falls

8    in the particular location where she fell. In fact, Plaintiff failed to present historical evidence of falls

9    in the store at all, regardless of location. She argues that Target "knows [] spills happen" as

10   evidenced by the fact that its training manuals require its employees to look for and clean up spills

11   and to carry "spill pads." Dkt. No. 32 at 11. However, this is not evidence that falls have actually

12   occurred in that Target store (let alone in the location where Plaintiff fell); rather, it is evidence of

13   expected precautions in a well-maintained business space. Plaintiff also asserts that the fact that

14   Target sells liquids and customers may carry beverages through the store makes it reasonably

15   foreseeable that a spill hazard would occur. The *Tavai* court rejected this argument, and this Court

16   does so here too. Plaintiff's reasoning would effectively impose a strict liability standard on any

17   retailer that sells bottled drinks, provides complimentary water, or allows customers to carry

18   personal beverages, regardless of whether the store has any actual or constructive notice of a spill.

19   Such a broad and unsupported expansion of liability is not only inconsistent with Washington law,

20   but also impractical. By Plaintiff's logic, every customer, from the coffee-sipping shopper to the

21   parent with a reusable water bottle, would render a retailer perpetually liable simply by customers

22   entering the store with a drink in hand.

23

24   ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

25   - 9

1    Nor does Plaintiff's expert witness's testimony create an issue of fact. According to

2    Plaintiff, her expert, Levi Dixon, will testify that the particular type of flooring in the Target store,

3    "VCT flooring", exposes Target customers to "a hazardous condition" when it gets wet because it

4    becomes "slippery and unsafe." Dkt. No. 32 at 5. He will also testify that "[b]ased on Target's

5    training/safety documents, Target appreciates that the salesfloor is at risk of getting

6    wet/contaminated on a routine basis throughout the day due to its self-service mode of operation,

7    and that as a result, the sales floor will become slippery and unsafe for pedestrians." *Id*. However,

8    the record remains devoid of any historical evidence of falls in the location where Plaintiff fell (or

9    even in the store itself). Simply stating that Target created a hazardous condition by installing a

10    floor that gets slippery when wet is insufficient to show that Target's "business and its methods of

11    operation are such that unsafe conditions are reasonably foreseeable in the area in which [Plaintiff]

12    fell." *Carlyle*, 896 P.2d at 753. This is particularly true in light of the video evidence that shows

13    that at least thirty customers were able to successfully navigate the area in the five minutes before

14    Plaintiff's accident. *See also Tavai*, 307 P.3d at 817 (concluding that the plaintiff's expert's

15    testimony that Walmart's floor "was especially slippery when wet" was inadequate to support

16    plaintiff's theory that Walmart's selection of its flooring was negligent because the plaintiff

17    presented "no evidence that other flooring material would have been slip resistant or even less

18    slippery when wet").

19    In short, Plaintiff has failed to produce any evidence from which the trier of fact could

20    reasonably infer that the nature of Target's business and its methods of operation are such that

21    unsafe conditions are reasonably foreseeable in the area in which Plaintiff fell. There are "no facts

22    from which it could be inferred that anything but a transitory condition caused her fall." *Carlyle*,

23    896 P.2d at 754. Thus, Plaintiff cannot establish her negligence claim and it must be dismissed.

24    ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

25

## VI.   CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS Defendant's summary judgment motion and DISMISSES this case.

Dated this 4th day of August 2025.

*Barbara J. Rothstein*
_____
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

- 11